Lekuntwane v. Help at Home CT, LLC Great. Thanks so much, Your Honors. Good morning. Peter Murphy on behalf of the defendants. Your Honors, the District Court erroneously found that a memorandum of agreement was enforceable against the defendants as a settlement, and then secondarily erroneously approved a class and collective settlement based on that enforced memorandum of agreement. The District Court should be reversed and the case should be remanded for additional litigation. So what would that litigation look like? I guess that's what I'm trying to figure out. My understanding... In other words, there was a memorandum of understanding. It agreed on a couple of material terms. Even you can see that, right? The amount of money was agreed upon and the payment schedule. And then there were additional terms to be worked out according to the memorandum of understanding and according to your position. Do I have that right? Correct. All right. And so if we were to agree with you, this would then go back and what? I mean, if it's a type two agreement under New York law, then there would still be a good faith obligation to negotiate the terms, right? My understanding is the parties agree that that structure from New York law does not apply to this case and that this case is governed by Connecticut law. Well, it's definitely governed by Connecticut law. The issue that the District Court didn't resolve was whether or not Connecticut sort of approaches this the same way New York does in the Second Circuit interpreting New York law. But just in terms of a useful way to consider this, if this were a type two agreement, and that's something that Judge Chatney did say, right? He said this looks like a type two agreement under New York law. Yeah, he mentioned that in his, I believe it was the oral ruling, Your Honor. But I think the parties both agree that that doesn't apply. And so we didn't brief that issue, nor did the other side, because we're focused on Connecticut law. But just so I'm clear then, what you're saying is all bets are off, you go back, you litigate, and there's no further discussion about a memorandum of understanding. It's just pick up where you left off before the first memorandum of understanding was drafted. Yes, Your Honor. And I wasn't involved at that time, obviously, when the case was first filed. But my understanding of the pleadings is the case was filed, and then the parties essentially immediately requested to go to a settlement conference. That didn't occur for several months because of Judge Margolis's retirement. And then, I'm sorry, Judge Garfinkel's retirement. It seems to me that the plaintiffs and the district court got wrong the nature of type one and type two agreement. And I'm not sure that those concepts really have any role here. A type two agreement cannot be enforced in the way that the plaintiff is asking that to be enforced, because by definition, it's lacking terms. So it can be enforced in certain ways. One could negotiate good faith from there, but entirely apart from whether this ever was a type two agreement, where it was just a memorandum of understanding without language calling it binding on the party. But it seems to me that the plaintiff made the wrong motion, that instead of moving to enforce the April 8th memorandum of understanding as a type two agreement, as supplemented by the subsequent agreement, what the plaintiff should have moved for is to enforce a simple contract that the plaintiff, that the defendant sent an offer of by setting out the terms that were offered, and the plaintiff accepted it. And that, well, that's the motion that should have made. And it would be up to us then to see if that motion remained in the district court. The district court would rule one way or another, and if the district court ruled that it was a binding contract, then it would come up to us simply as a contract and offer it an accepted offer with no need to refer to incomplete contracts and type two. I would agree, your honor, with that. That is not the motion the plaintiff made, right? The plaintiff clearly moved to enforce the memorandum agreement. Even the district court judge said, you know... Well, is that what we should do? We should just send it back and say the plaintiff should move to enforce a simple contract because the plaintiff's theory is that the defendant made an offer of contract by sending all the terms, and the plaintiff accepted it by signing it. And so the plaintiff's position should be that's a contract. And that's what the motion should be in the district court. Is that consistent with your view of what should happen? Well, I don't know what the plaintiff would do if the case was remanded, but I do agree with your honor that the district court erred by enforcing a memorandum of agreement. And that was what the plaintiff specifically asked the district court to do. And so to the extent the district court acted on the plaintiff's chosen strategy to move to enforce a memorandum of agreement, the district court erred. And I think that's apparent in the Santos case that we addressed in our brief. That's a Connecticut addresses this exact situation, right? In the Santos case, there was a mediation with a judge and the parties reached some sort of memorandum of agreement. But ultimately, the Connecticut Appellate Court found that the trial court erroneously enforced the terms of that proposed settlement because a key consideration was missing. And that's the exact situation we're in here, your honors. A memorandum of agreement that's one and a half pages bullet points simply cannot settle a large class action and collective action, right? Those are complicated settlements. And that's apparent from the face of the emails that we put forth the district court where defendants then counsel said that there were several details that need to be worked out to finalize resolution of this matters. And they highlighted the areas that remain unresolved. And so even the counsel at that time understood that the memorandum agreement was not a finalized settlement that can be enforced and that significant additional proceedings would be undertaken. And that's what happened too, right? We've brought the district court with that record and there was all sorts of discussions between the defendants then counsel and plaintiff's counsel, including potentially adding 70 more people to the class and allocating the payments between the parties. I mean, I'm sorry, between the proposed class members. And so those are really significant details. I know the plaintiffs tried to minimize those in their brief to this court and call them non-essential, but allocating payments to the class members is a key essential term of any settlement in a class action. And so I think the district court erred by enforcing this memorandum of agreement against the parties. And I know I'm running out of time, Your Honor, but we also raised the additional argument that in an FLSA case, no settlement is final until the isn't a simple employment case that attorney Durkin and I have. Well, it may not be final, but I mean, I guess on that point, it's not clear to me that the contract isn't an enforceable contract. The court might conclude that it's not a fair settlement and say, I'm not going to, I'm not going to honor this contract, but I don't know that you as a party to this contract get to say, and we're not bound by it until the court approves it. Well, I think the memorandum of agreement specifically noted that it would be subject to court approval. Any FLSA settlement would be. Correct. And until my point, Your Honor, is unlike a simple employment case or an adjunct case where you and I can just agree to a $30,000 payment to the plaintiff and withdraw from court. Here, we cannot do that, right? This court in Cheeks very specifically said it needs court approval. So until the court approves it, it's not final. And that is important. It's not final. The issue is whether you're bound by it. I mean, you seem to be suggesting that until the court approves the Fair Labor Standards Act claims, as kind of put it by Cheeks, you get to renegotiate terms. I mean, assuming you had an otherwise enforceable contract with all material terms on paper and signed, you seem to be taking the position that until the court says this is a fair settlement under the Fair Labor Standards Act, you get to back and renegotiate. Is that your position? At least up until it's submitted to the court. I would agree, Your Honor, if we submitted the document to Judge Margolis or, I'm sorry, Judge Schotteny in this situation. At that point, you might have a final enforceable settlement. But up until that point, when the parties are still negotiating, there can't be a final settlement because it hasn't been either submitted or approved by the court in the FLSA context. So, I can see I'm over my time, Your Honor. Did we address the fairness of the, not the contract for enforcement, did we address the question of the fairness of the contract if there was one that remained hypothetically by plaintiff's acceptance of the defendant's offer? Is that something we should move on now? I'm sorry, Your Honor. I had a little difficulty understanding you there. I apologize. I'm saying, I'm asking whether we should, on this appeal, address the question, fairness of the terms of the hypothetical contract that was created by the, according to plaintiff's theory of the case, the offer of contract by the defendant to the plaintiff's, which the plaintiff's accepted by signing. You're saying that's something we dealt with. Should we address that now, whether that hypothetical contract is fair on its terms, on the assumption that the district court would find that it was a contract? No, I don't think, if I understood Your Honor's question correctly, the answer is no, you should not address that issue. This court, I think, is limited to determining whether the trial court acted appropriately in enforcing the terms of the memorandum of agreement, not whether it was fair and whether some sort of class or collective settlement is fair. I think the only issue before this court is whether the district court correctly approved the memorandum of agreement. Thank you, Your Honor. All right. Thank you. You've reserved two minutes of rebuttal. Mr. Murphy, we'll now hear from Mr. Durkin. I'd like to reserve one minute of rebuttal, please. No, no. The rebuttal only goes to the appellant. Forgive me. May it please the court. In Connecticut, mutual assent to form a contract is to be judged only by the overt words and actions of the parties, rather than by any hidden or subjective intentions of them. The written signature of an offeror to a contract is not necessary to bind that offeror if their assent to the contract is otherwise indicated. That's the Whitman case that's been briefed before this court. Here, the defendant's assent to this contract, the final settlement agreement, is indicated by several overt acts and words. One. You're talking about what you say is a contract that emerged from the defendant's sending you an offering contract which you then accepted. Is that right? That's what you're talking about? The document our client signed, your honor, yes. Yeah, but you didn't move to this court to enforce that as a contract that resulted from offer and acceptance. You moved to have the court enforce a memorandum of understanding under the theory of type two preliminary contract that was then supplemented by the subsequent offering and acceptance. So that's not the issue that's before us. We don't have before us the question. The district court simply didn't give an order enforcing the contract that you claim emerged from your acceptance of the defendant's offer. It seems to me that's the motion you should have made, but you didn't make that. Your honor, during the course of the briefing, we relied on the final settlement. I'm going to call it the final settlement agreement. In our initial memorandum, we filed a supplemental filing, docket number 75, that specifically relies on that final settlement agreement as the combination totality of the circumstances. The district court relied on that and the evidence of the party's agreement, an oral agreement supervised by the magistrate judge. Those words were reduced to a memorandum of understanding drafted by the defense, sent to our counsel here, who said that we have a deal. The defense didn't push back on that at time. And then they drafted a document, 21 to 25 pages. I believe it's a 21-page document containing all of those terms, sent it to our client. She signed it and returned it back to them. And it's only at that point did Help at Home attempt to back out of the deal. It would have been a cleaner motion, I agree, to make the final settlement agreement a bigger part of our initial filing. But it is a document that we relied on in our briefing. It's a document that we submitted to the court, to the district court, as an exhibit that was unobjected to. And it was discussed at oral argument in front of the district court. The district court, as I understand it, the district court never moved on the question that really is the pertinent question. Was that an offer and acceptance that produced the final contract of settlement of this litigation? Instead, the district court went off with no encouragement on a kind of a circuitous thing about the memorandum of understanding being a type two preliminary contract that was enforceable, supplemented by what you're calling the final agreement. The district court said they didn't rule on whether there was a final contract resulting from offer and acceptance. Respectfully, Your Honor, I think he did. In his oral ruling, and we brief it and we cite it in our papers, he discusses, you know, the district court doesn't rule on whether the memorandum of understanding itself is the contract. But he goes on to say that if the MOU lacks sufficient completeness or definitiveness on its own, any such defect was undoubtedly cured in the process that followed, resulting in an enforceable final settlement agreement under Connecticut law. And he's referring to that September 2021 document. That's pages 180 to 182 in the appendix. At oral argument on the motion to enforce, you know, the district court questioned Help at Home about the final settlement agreement and whether or not it was an enforceable agreement under Connecticut law. At that time, Help at Home presented two arguments that it wasn't. One that it wasn't signed by Help at Home. That argument is taken care of by Connecticut law under Whitman. A party doesn't have to sign a contract for it to be enforceable against them. And second, as a corollary to that argument, that the defendant didn't consent to the agreement. The only evidence in the record suggested that Help at Home overtly intended and assented to settlement contract. Its lawyers drafted and sent to our client a detailed settlement document which she signed and returned to them. The defendant didn't offer evidence at the evidentiary hearing that there was a misunderstanding, that its then counsel acted without authority, or that the defendant didn't see that document and approve it before it was sent to the court. All of this occurred under a deadline of the next day for the parties to file preliminary approval papers with the court, which shows that they were trying to complete and get the settlement finalized and signed so that those papers could be properly submitted. When you made your application for approval, you attached a copy of the settlement agreement that had been forwarded to your client, and your client had signed, correct? We did, yes, your honor. And the court specifically noted that both in its discussion of whether an agreement actually had been reached, and in its approval order, a portion which is in the special appendix at 19 through, I forgot how many pages it is. So the court's focus was indeed on the settlement agreement that was forwarded to your client, signed by your client, which came after the understanding, correct? Correct. And that's the document to which Judge LaValle has been referring in terms of . . . and so you went to the district court and said . . . and you made your argument that there was an agreement. You didn't use offer and acceptance in the context of the final agreement. I mean, you just said . . . but your argument in front of the district court was, this does memorialize exactly what our agreement was, this is what they forwarded to us, we signed it, and now for some reason they don't want to adhere to it, right? That's essentially it, your honor. We didn't use offer and acceptance, I don't think, in oral argument at that time. I'm saying . . . But I'm afraid that neither did the judge, right? The judge says any alleged defect with the memorandum of understanding was cured. That's different, I think. I think this is the point Judge LaValle was making, is that that's different than saying, I find that there was an offer and acceptance of the written agreement, which came later. I mean, is this just semantics? I'm trying to understand the argument you're making now, and how that's different from the argument that you seem to be making below. I think it is just semantics, your honor. I think the overall point that we're making is that in September of 2021, our client signed a settlement agreement and we submitted it to the district court as part of the motion to enforce, and then it was approved by the court and notice went out to the class under that agreement and the procedure contained within it. Let me ask you a question. The memorandum of understanding at 8216-217 identifies, it's highlighted, some in green, some in yellow, I'm not certain why green and yellow, but in any event, that's the reason. It's just quirky. And number nine says uncashed checks don't revert to the employer, they go to Cypress. Obviously it's intended, the intent, I take it, is that it's the employee's money. It doesn't go back to the employer. It's either Cypress, which goes to the state for later to be claimed through Cypress. Was that issue resolved in the agreement that was forwarded to your client? Give me one moment to look. I believe it was. The settlement agreement took care of all of those terms. Did the agreement that was forwarded to you that your client signed provide what the release language would be on the checks? I believe that's in there, your honor. And how about penalties for late payments? That is in there, yes. So all of the items that, is it your position that all the items that remained or for which there was some concern that were open were covered by the memorandum of understanding or the agreement that was forwarded to your client for your client's 14 or 15 that actually lays out that? I recall the charge. Yeah, that's, everything's in there. All right, thank you. So your position is that we can just disregard that all the stuff about the MOU and the Type 2 Enforceable Preliminary Agreement, all that stuff is a distraction that can simply be disregarded. And it was clearly the only way the court would have concluded that the ultimate offer and acceptance of the terms of the final agreement would have cured anything of the lack of terms in the MOU would be if the district court found implicitly that there was an offer and acceptance of it. So you're saying we should simply assume that to be true, even though it wasn't the theory that was used to judge and explain the ruling? I, forgive me, your honor, I had a hard time hearing some of that. I'm going to try to answer that. The answer I believe is yes, that ultimately the question is whether the district court clearly erred in concluding from all the facts that the parties had a binding settlement agreement. We don't believe he did based on the totality of the evidence and the final settlement agreement, which I will refer to one more time. You're saying essentially, you're saying essentially that the only way the district court could have believed that the ultimate final agreement cured the gaps in the MOU would be if the district court found implicitly, even though it didn't say so, that there was an offer and acceptance of those terms so that they were a binding contract. And you say we don't need to extend the fact to get it stated right because there's no doubt that the district court found that there was an offer. Your honor, I think the answer to that ultimately is yes. The district court did sidestep ultimately the MOU issue. So the district court may have concluded ultimately that it was a binding settlement agreement, but it looked to the complete document and rested on that instead. And I see that I'm out of time, so thank you very much. All right, thank you, Mr. Durkin. We'll now hear from Mr. Murphy for a two-minute rebuttal, sir. Real quick, your honors. There's essentially two Connecticut appellate court cases that the parties rely on. Judge Chodny relied on the Whitman case, which is the plaintiff's site. And in that case, the parties had reached a binding settlement on essential terms and then negotiated afterwards on some non-essential terms. And I think the defendant even tried to add a condition. Let me ask you a question. If your client had sent a signed document and then they'd signed it, did you have an agreement? If my client had signed the document when you sent it, if it was a signed document and then they signed it, did you have an agreement? Well, if my client signed it, I wouldn't be here today, your honor. Would that document have been complete? If my client signed it, yes. But if my client didn't sign it, and that's an essential term of that agreement. You're saying that your forward inviting it to your opponent wasn't an offer? What I'm saying, your honor, is that wasn't an issue in this case. The plaintiffs moved to a memorandum of agreement. You're not contesting the judge's approval as an abuse of discretion with regard to the Fair Labor Standards Act issue, are you? The secondary issue? Yeah. No, because he had already enforced. So the only issue in front of us is, is there or is there not an enforceable agreement? Correct. Is there anything else, is there any other, would there be any other discovery or anything else that the court would have to do to come to this law issue? Or is it all within the record that we have in front of us? That's an interesting question, your honor, because the party's briefed and focused on the memorandum. Did you ask for additional discovery in front of Judge Chatney? Did I, your honor? Yeah, in opposing the motion. No, because the motion focused on approving the memorandum of agreement. And I think to just briefly, this might help answer your honor's point, is the Santos case from the Connecticut Appellate Court addresses the situation we're in. I think Judge Chatney improperly relied on the Whitman case. And further, your honor, that Williams case from the Eastern District of New York, I think does a good job addressing the point your honor, I think, is making. Because in that case, the parties, after a settlement agreement, mediation rather, had exchanged a term sheet. And then to your honor's point, they'd even exchanged drafts of a settlement agreement, kind of like in this case. And in that case, the district court judge found that neither the term sheet nor the settlement agreement were enforceable. And in fact, the judge in that case focused specifically on the language in that draft settlement agreement, which Judge Chatney did not. You and I would agree that the reason why you say that this is not enforceable is because your client didn't sign it. She did not sign it. No. We all know that, counsel. You don't have to repeat that. The question is, your view is that it's not enforceable because she didn't sign it. The answer is yes. Correct. Yeah. Okay, thank you. Okay, thank you, your honor. What's your authority for the proposition that an offer needs to be signed in order to create the contract when it's accepted? What I always learned in law school was if you make an offer of contract and it's accepted, unless it's in the special circumstances that require a signature in the party to be charged, if you make an offer of a contract and it's accepted, that's a contract. What's wrong with that? That wasn't the issue before the district court, your honor. The issue before the district court was whether the memorandum agreement was the contract that was enforceable, not the secondary settlement agreement. And I think we would need some additional proceedings below if plaintiff proceeded in that manner. The district court's reasoning necessarily included the proposition that the additional terms after the MOU, that those additional terms had been offered and accepted because there's no way the district court could have thought that they cured the gaps in the MOU unless the district court concluded that there had been an offer and acceptance with respect to those terms. And you answered Judge Westley that if that offer and acceptance had been signed by you and then signed by the plaintiff, it would be a complete binding contract. So why is it anything less than a binding contract just because you didn't sign it? Well, I think the point your honor made before and one of your fellow panel members made before was that Judge Honey didn't specifically find that in the oral ruling and then the ECF notice. He's not clear on that, I would say. And he didn't address specifically that point. I know I'm well over my time, your honors. I appreciate your patience. All right, thank you. We will reserve decision. Safe journey home, gentlemen.